UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | Criminal No. 4:19-cr-20112-04 |
| v. | Hon. Matthew F. Leitman<br>United States District Judge |
| D-4 DAMARIO HORNE-MCCULLOUGH | |
| Defendant. | Hon. Stephanie Dawkins Davis<br>United States Magistrate Judge |

**THE UNITED STATES OF AMERICA'S RESPONSE TO DEFENDANT'S MOTION FOR REVOCATION OF MARGISTRATE JUDGE'S ORDER OF DETENTION**

The government submits this memorandum in response to Horne-McCullough's motion to for revocation of Magistrate Judge Davis's detention order. Judge Davis properly considered the factors during the initial detention hearing and determined that no conditions or set of conditions were available that could assure the safety of the community if the Court releases Horne-McCullough.

**I.   PROCEDURAL BACKGROUND**

A grand jury indicted Horne-McCullough for conspiracy to distribute cocaine base and heroin, as well as use of a communication facility to cause, commit, or facilitate a felony controlled substance. (R.1: Indictment, Pg.ID 1-8). The grand jury indicted Horne-McCullough for a conspiracy that began in summer 2017 and lasted until February 27, 2019. Horne-McCullough made his initial

appearance on March 6, 2019. The magistrate held a detention hearing and ordered Horne-McCullough detained pending trial on March 7, 2019. (R. 17: Order of Detention Pending Trial, Pg.ID 26-28). Horne-McCullough now seeks review of his bond status and is requesting an unsecured bond.

## II. ANALYSIS

### A. Standard of Review

A magistrate's order for detention may be reconsidered by the district court pursuant to 18 U.S.C. § 3145. Although the statute does not set forth the standard for review, it appears that the district court should make a *de novo* determination of the magistrate's order. The district court should not defer to the magistrate judge's ultimate conclusion, even if "the whole process [in the district court]...[does not] start from scratch, as if the proceedings before the magistrate had never occurred." *United States v. Yamini*, 91 F.Supp.2d 1125, 1128 (S.D.Ohio, 2000) *quoting*, *United States v. Koenig*, 912 F.2d 1190, 1192 (9th Cir.1990). Rather, "the point is that the district court is to make its own 'de novo' determination of facts, whether differed from or an adoption of the findings of the magistrate." *Id.* Thus, under § 3145(b) a district court is not required to engage in a plenary procedure, but some independent review of the magistrate's decision is required. *Id.* In reviewing the appeal, the court "may 'start from scratch' and hold a new hearing

2

or review the transcripts of the proceedings before the magistrate." *United States v. Hammond*, 204 F.Supp.2d 1157, 1162 (E.D.Wis.2002).

### B. 18 U.S.C. § 3142(e) Detention and the Rebuttable Presumption

The Bail Reform Act of 1984 provides that a court shall order a defendant detained pending trial if "no condition or combination of conditions will reasonably assure the appearance of defendant and the safety of any person and the community." 18 U.S.C. § 3142. Specifically, 18 U.S.C. § 3142(e)(1) explains that if, after a hearing, the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of defendant and the safety of any person and the community, the judicial officer shall order the detention of the person before trial. The finding of dangerousness must be supported by clear and convincing evidence. 18 U.S.C. § 3142(f)(2)(b).

A rebuttable presumption that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community arises when there is probable cause to believe that the defendant committed an offense (1) for which the maximum prison term of ten years or more is prescribed under the Controlled Substances Act (21 U.S.C. §§ 801-904), or (2) that involved the use a deadly weapon in furtherance of a drug trafficking crime under 18 U.S.C. § 924(c). 18 U.S.C. §§ 3142(e)(3)(A) & (B). Horne-

3

McCullough is charged with an offense that triggers a rebuttable presumption: conspiracy to distribute over 28 grams of cocaine base and over 100 grams of heroin.

The resulting presumption in favor of detention imposes a "burden of production" on the defendant, and the government retains the "burden of persuasion." *United States v. Stone*, 608 F.3d 939, 945 (6th Cir.2010). A defendant satisfies his burden of production when he comes forward with evidence that he does not pose a danger to the community or a risk of flight. *Id.* Even when a defendant satisfies his burden of production, however, "the presumption favoring detention does not disappear entirely, but remains a factor to be considered among those weighed by the district court." *Id., citing United States v. Mercedes*, 254 F.3d 433, 436 (2nd Cir. 2001).

### C.  18 U.S.C. § 3142(g) Factors To Be Considered

In making a determination as to whether there are conditions of release that will reasonably assure the safety of any other person and the community, the court must consider certain factors. The factors are (1) the nature and circumstances of the offense charged, including whether the offense involved a firearm; (2) the weight of the evidence against the person; (3) the history and characteristics of the person, including the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community

4

ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning court proceedings; and whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. 18 U.S.C. § 3142(g).

**(1)    Nature and Circumstances of the Offense Charged**

The nature and circumstances of this offense highly favor detention. That the offense is one that confers the presumption in favor of detention is a factor for the Court to consider and demonstrates the serious nature of this offense.

> a. Horne McCullough was involved in a serious conspiracy that dealt cumulatively dealt large amounts of controlled substances.

 Moreover, the length of this offense demonstrates the serious nature of the offense. That the grand jury indicted Horne-McCullough for an offense that began in May 2017 and ended in February 2019 demonstrates that Horne-McCullough was part of a group that persistently engaged in the sale of controlled substances. The group primarily engaged in street level drug sales but did them with such frequency that there was cumulatively enough for an amount that exceeds the five year mandatory minimum penalty, over 100 grams of heroin and 28 grams of cocaine base. In fact, the evidence demonstrates that the conspiracy instead involved

5

amounts that far exceeded that and the possibility exists that more serious charges could arise.

Moreover, the group dealt both cocaine base and heroin, both dangerous controlled substances. In fact, some of the controlled purchases from this group tested positive for fentanyl, an extraordinarily dangerous controlled substance. Numerous witnesses testified that this group engaged in sex trafficking and distribution of cocaine base and heroin. They have also testified that this drug conspiracy engaged in drug sales not just in Michigan, but also in Tennessee, as further noted below.

> b. Horne-McCullough's intercepted calls demonstrated that he had active involvement in the drug enterprise and used one of the target telephones for an extended time period.

This group was the subject of two separate Title III interceptions, one for a phone primarily used by Dontese Woods from December 19, 2018 to January 15, 2019, and another for a phone primarily used by Christopher Wilson from January 17, 2019 to February 15, 2019. The evidence from those interceptions demonstrated that Horne-McCullough was extensively involved in the drug conspiracy. Horne-McCullough could be heard making drug deals on the target telephones. On the second telephone, Horne-McCullough took possession of the Wilson's telephone on approximately January 25, 2019, when Wilson was arrested, until February 4, 2019,

6

when Wilson was released from jail. He used the phone to conduct drug deals.

Horne-McCullough's first appearance occurred only three days into the interception, on December 22, 2018. Exhibit A is a rough transcript from that call, where an individual identified as "Rio" asks Dontese Woods to "bring the heat." This is a reference by commonly known street parlance to a firearm, and Horne-McCullough, is known as "Rio." Therefore, it appears during the two calls in Exhibit A that Horne-McCullough, for an unknown reason, is requesting that Dontese Woods move a firearm to the public to provide it to him from a residence.

This was not Horne-McCullough's only appearance on the interception of the phone primarily used by Dontese Woods. Other intercepted calls also demonstrated that Horne-McCullough sold drugs on behalf of this group. However, Horne-McCullough's extremely active time on the intercepted calls occurred during the second interception, when he held the phone after Wilson's arrest and used it to conduct drug deals for the group.

Exhibit B contains two separate phone calls. In the first, Horne-McCullough explains that he is the one using the phone because Wilson has been arrested. In the second call on second page of Exhibit B, Horne-McCullough conducts a drug sale, doing so with the ease of someone accustomed to the drug business, explaining to the drug customer that "Ossington," the normal drug house used by his organization,

7

is "too hot" for the pick-up of drugs at that time. Exhibit C is another drug related conversation with a customer where they discuss the purchase and meet up for a "fat 20," a quantity of a controlled substance, another conversation occurring on January 25, 2019. Exhibit D is call with a co-conspirator, Mercedes Denny, where the two discuss drug sales. They also specifically discuss the drug amounts at different locations that different co-conspirators have.

Exhibit E contains a portion of one call with a co-conspirator, "Little," or Larry Elam, where he discusses whether Elam has any more "yay" left, a conversation he then repeats with Mercedes Denny. Yay is known to be a street term for cocaine base. These calls demonstrate that Horne-McCullough, while holding the phone, was both making individual drug sales and coordinating the drug activities of others.

Exhibit F is another of Horne-McCullough's drug transactions and again demonstrates that he would travel to make drug transactions.

Exhibit G is notable because it is a conversation with Christopher Wilson while Wilson is incarcerated. They discuss another member of the group who had recently been arrested for stabbing his girlfriend. Also, they discuss an individual being in Tennessee. This is notable because this is the other area that witnesses and other intercepted calls indicate is another location that this group distributes drugs.

8

Exhibit H contains two calls and is notable because it demonstrates that on February 3, 2019, Horne-McCullough continues to use the phone for drug purposes, and that he again is discussing possible connections to Tennessee.

In Exhibit I, Horne-McCullough discusses the price of a bottle of fentanyl with Wilson. Finally, in Exhibit J, Horne-McCullough ironically discusses the fact that Mercedes Denny had been set up and arrested on February 4, 2019, and arrested by the police. What Horne McCullough did not know, though, was that he was the subject of a controlled buy himself on the same date.

These Exhibits are a representative portion but only represent a small amount of Horne-McCullough's drug related activities captured on the interceptions. Once Wilson was incarcerated after his arrest, Horne-McCullough assumed his role of coordinating others and engaging in street level transactions.

    c.    Horne McCullough possessed a firearm while selling drugs.

During McCullough's arrest, an assault-style AR pistol firearm was recovered from his residence. Horne-McCullough is the lawful owner of that firearm and there is nothing inherently unlawful about his ownership of that gun. However, following the recovery of that firearm, a witness stated and later testified in grand jury proceedings that Horne-McCullough possessed the AR pistol firearm recovered from Horne-McCullough's residence while selling drugs on a specific date.

9

Specifically, in a statement, this witness identified Horne-McCullough as possessing two firearms and that the witness had observed Horne-McCullough with both firearms. It therefore appears that aside from making menacing photographs with firearms, that Horne-McCullough used the firearm to further his drug dealing.

> c. Horne-McCullough's limited admissions demonstrate his involvement in the conspiracy and his participation in its multi-state activities.

Upon his arrest, Horne-McCullough agreed to speak to agents after waiving his Miranda rights. Horne-McCullough at first denied any knowledge or participation in drug sales, then admitted only once he was informed that he was captured on an interception selling drugs. He then admitted to only selling 1.5 -2 grams of cocaine base, a vast underestimation given his activity on the interceptions. He also admitted to travelling to Tennessee with Wilson, the nominal leader of this group. However, Horne-McCullough claimed that he was only travelling there for music and did not know Wilson was in Tennessee to sell drugs. Given Horne-McCullough's ease in selling drugs immediately upon picking up the phone and his numerous drug-related conversations with Wilson, that explanation is preposterous. In reality, Horne-McCullough travelled interstate with Wilson for the purpose of selling drugs.

**(2) Weight of the Evidence**

The weight of the evidence against defendant refers to the weight of evidence of dangerousness, not the weight of the evidence of guilt. Here, the weight of the evidence of dangerousness is strong because of dangerous nature of the substances dealt by Horne-McCullough and his associates, Horne-McCullough's large role in the drug sales, and Horne-McCullough's use of firearms involved with his sale of controlled substances.

**(3) History and Characteristics of Defendant**

Horne-McCullough's lack of criminal record is overshadowed by his longstanding participation in a criminal drug conspiracy dealing dangerous controlled substances. However, Horne-McCullough lacked significant real employment at the time of his arrest, likely because his primary source of income was drug dealing. Finally, it does not speak well to Horne-McCullough's character that he made a music video where he is shown shooting an individual that is supposed to be an FBI Agent in the face several times. While the government recognizes the extraordinarily limited value of the video, there are likely better ways to spend one's time or better ways to demonstrate solid character than performing videos that involve the fake assassination of federal agents.

### (4) Nature and Seriousness of the Danger Posed

As to the last factor, the nature and seriousness of the danger to any person or the community that would be posed by the person's release, defendant does not fare well. Engaging in drug dealing while armed presents a substantial danger to the community because if a drug deal goes bad, then the use of a gun threatens the lives of others. This is a group that engaged in sex trafficking and the distribution of cocaine base, heroin, and, at times, fentanyl. They took over numerous residences on the south side of Flint to further their drug operation.

The Ossington residence referred to on the intercepted calls was infamous in Flint. There is a wall that is normally painted to announce community or neighborhood events or other commemorations. In late December, an unknown individual painted a wall referencing the Ossington address with the notation "kill your local heroin dealer." This group had it painted over the same day and kept right on dealing. This group is dangerous, and Horne-McCullough, through is participation in this conspiracy, has demonstrated his dangerousness.

### III. CONCLUSION

Magistrate Judge Davis concluded that "evidence of defendant's drug trafficking coupled with the relatively recent involvement of firearms provide clear and convincing evidence of a danger to the community, and I find there are no

conditions that will provide a reasonable assurance of safety." (R. 17: Order, Pg.ID 28). Though this review is *de novo*, there is no reason to alter this finding. Magistrate Davis made the correct finding based on the evidence in this matter and the government respectfully requests that the Court deny the request of defendant Damario Horne-McCullough to revoke the order of detention.

Respectfully submitted,

MATTHEW SCHNEIDER
United States Attorney

Date: March 26, 2019

s/CHRISTOPHER W. RAWSTHORNE
Christopher W. Rawsthorne
Assistant United States Attorney
210 Federal Building
600 Church Street
Flint, Michigan 48502-1280
Phone:  810-766-5177
Email:  Christopher.rawsthorne@usdoj.gov
WI Bar No.:1059889

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 26, 2019, the foregoing document was electronically filed by an employee of the United States Attorney's Office with the Clerk of the Court using the ECF system which will send notification of such filing to the following:

Joan Morgan

                                        s/CHRISTOPHER RAWSTHORNE
                                        United States Attorney's Office
                                        600 Church Street
                                        Flint, Michigan 48502-1280